Clayton CORLEY, Appellant,

v.

EXXON PIPELINE COMPANY, Larry J. Martin, Western Contractors Service Inc., and Matcon Inc., Appellees.

No. A14–90–00469–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 19, 1991.

Rehearing Denied Feb. 6, 1992.

William E. Ryan, Houston, Charles E. Soechting, San Marcos, for appellant.

Randall M. Ebner, Diane M. Morrow, Jeffrey H. Marsh, Gary G. Green, Jack McKinley, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

Clayton Corley complains of a judgment holding him strictly liable for damages caused by the removal of lateral and subjacent support for Exxon Pipeline Company's [Exxon] easement. He also contends the trial court erred by holding him liable to co-defendant Western Contractors Service [Western] for $5000 of the cost of an engineering study, and by ruling that his third-party action against Matcon, Inc. was barred by limitations. We affirm the judgment.

It is undisputed that Exxon purchased this easement in 1919, and that in 1978 Corley purchased the property through which the easement runs. Corley leased the property to Matcon, a company of which he was president. Corley admitted that the sandpit was dug during his ownership of the property. In May of 1983, Corley sold the property to Western. Appellee Martin is president of Western. On April 4, 1985, the side of the sandpit collapsed, exposing a section of Exxon's pipeline.

Exxon sued Corley, Western and Martin to recover damages arising from the repair of the subsidence. Corley filed a third-party claim for contribution and indemnity against Matcon. The trial court granted Exxon's partial summary judgment, holding that strict liability was the standard to be applied to a landowner's withdrawal of naturally necessary lateral and subjacent

support of an adjacent easement. The jury determined damages, and also rejected Western's claim that Corley had agreed to pay any amount beyond $5000 for engineering fees.

■ In his first seven points of error, Corley challenges the application of strict liability to the facts before us. Corley contends the absolute right to naturally necessary lateral and subjacent support for adjacent land applies only to owners in fee simple, and not to easement owners. This court rejected that distinction in *San Jacinto Sand Co. v. Southwestern Bell*, 426 S.W.2d 338, 345 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Presented with the same argument as that raised by Corley, we held that "the duties and obligation as between the owners of the dominate estate and the servient estate, if different, are greater," and "the easement owner is entitled to lateral and subjacent support for its easements, its lines and its property lawfully thereon, and that the trial court correctly applied the doctrine of lateral and subjacent support." *Id.*, (citations omitted).

Since there were no genuine issues of material fact and Exxon's partial summary judgment evidence established it was entitled to judgment as a matter of law, the trial court properly granted its motion for partial summary judgment and properly overruled Corley's motion for judgment non obstante veredicto. Points of error one through seven are overruled.

Corley's eighth and ninth points of error contend that, because Exxon's action is barred by limitations, the trial court erred by granting Exxon's motion for partial summary judgment and by failing to grant his motion for summary judgment. Corley argued that Exxon's cause of action accrued and the statute of limitations began to run when the sandpit was dug, sometime before 1983. Under Corley's analysis, Exxon's filing would be beyond the two-year limitations period. Prior Texas cases and the RESTATEMENT (SECOND) OF TORTS reject that analysis.

■ An action for permanent damages to land accrues, for limitations purposes, upon discovery of the first actionable injury. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984). A cause of action for damaging land does not lie for anticipated damages, rather it accrues at the time the land is actually damaged. *Allen v. City of Texas City*, 775 S.W.2d 863, 866 (Tex. App.—Houston [1st Dist.] 1989, writ denied). These holdings are consistent with the portions of the RESTATEMENT (SECOND) OF TORTS that address withdrawing naturally necessary lateral and subjacent support, sections 817 and 821. RESTATEMENT (SECOND) OF TORTS §§ 817 and 821 cmts. i (1979). These comments state, "[t]he withdrawal of the naturally necessary ... support subjects the actor to liability but does not make him liable in an action for damages unless, and until, a subsidence occurs".

■ Exxon filed its cause of action within fourteen months of the collapse of the sandpit, within the two-year limitations period. Accordingly, the trial court did not err by granting Exxon's motion for partial summary judgment or by denying Corley's motion for summary judgment. Points of error eight and nine are overruled.

■ Corley next asserts the trial erred by failing to submit issues concerning the negligence of his co-defendants, Western and Martin. Although purportedly requested issues are included in the transcript, nothing in the record indicates that the trial court saw them or ruled on them. To preserve his complaint for appellate review, Corley was required by the rules of procedure to obtain the trial court's ruling and signature on the tendered issues. TEX. R.CIV.P. 276. He did not do so and, thus, waived any error. Point of error ten is overruled.

■ In his eleventh point of error, Corley contends the trial court erred by entering judgment for $5000 against him on the contract cross-claim of Western and Martin. At the time that Exxon filed this cause of action, it also sought a mandatory injunction against Corley, Western and Martin to compel restoration of support to the pipeline easement. As a result of the hearing on the requested injunction, an en-

gineering study was necessary to begin that restoration. Western and Martin asserted in their cross-action that Corley had agreed to pay one-half of the cost of the engineering study, which eventually totalled $57,016. Corley argues the judgment is in error "since no questions were submitted to the jury on that theory, and cross-plaintiffs' right to recover was not established as a matter of law." The only question submitted to the jury on the contract issue asked whether Corley agreed to pay one-half of the engineering fees after it became known that the fees would exceed $10,000; the jury answered he had not.

During the charge conference, the trial court stated the $5000 liability had been admitted and judgment would be entered for that amount; but that the jury would decide whether Corley had agreed to pay any greater sum. Corley made no objection to the trial court's decision. In his trial testimony and his sworn affidavit in response to Exxon's motion for partial summary judgment, Corley admitted he entered into an agreement with Western to pay one-half of the cost of an engineering study, with the cost to be between $5,000 and $10,000. Corley himself established, as a matter of law, each of the essential elements of the contract claim and the $5000 of liability. The trial court properly entered judgment for Western and Martin on their contract action; Corley's eleventh point of error is overruled.

◼ Corley also complains of the award of prejudgment interest to Exxon. Since no enabling statute applied, the trial court awarded prejudgment interest based on general principle of equity.[1] *Cavnar v. Quality Control Parking, Inc,* 696 S.W.2d 549, 552 (Tex.1985) Corley contends the trial court misconstrued *Cavnar;* arguing that *Cavnar* has a narrower range of application and has never been applied to cases

involving property damage. As our previous decisions indicate, we do not agree.

"Besides extending the recovery of prejudgment interest to personal injury cases, *Cavnar* established a uniform standard for determining the amount of prejudgment interest in all cases where the amount of interest was not controlled by operation of law." *Acco Constructors v. National Steel Products,* 733 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1987, no writ). This court has applied *Cavnar's* rationale and holding in cases involving damage to property. *See, e.g., Buffalo Marine Service, Inc. v. Monteau,* 761 S.W.2d 416, 425 (Tex.App.—Houston [14th Dist.] 1988, no writ). Finding no error in the trial court's award of prejudgment interest, Corley's eleventh point of error is overruled.

◼ In his final point of error, Corley challenges the grant of third-party defendant Matcon's motion for summary judgment. Matcon's motion asserted that Corley's third-party action was precluded by the TEX.BUS.CORP.ACT ANN. art. 7.12 (Vernon 1980)[2]. Under the common law, a dissolved corporation could not sue or be sued, and all legal proceedings in which it was a party abated. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 550 (Tex.1981). Article 7.12 codified the equitable remedies that had developed to alleviate the harshness that of rule. *Id.,* at 549–51. The relevant language of the statute in effect when Matcon dissolved reads as follows:

> The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within three years after the date of such dissolution....

Article 7.12.

Matcon's motion correctly contended that Corley's third-party action was not a pre-

---

Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp.1991), which codified *Cavnar,* did not become effective until September 1, 1987, more than a year after this action was filed and does not apply.

2. The Act has been amended twice since Matcon was dissolved in 1984, but these amendments were not effective until 1987 and and 1989. *See* Tex.Bus.Corp. Act Ann. art. 7.12 (Vernon Supp. 1991).

dissolution claim filed within three years of the corporation's dissolution, as required by the statute. Matcon presented summary judgment evidence establishing that it was voluntarily dissolved and issued a certificate of dissolution by the Secretary of State on April 30, 1984. Corley's response to the motion for summary judgment admitted that his third-party action was filed more than three years after the dissolution.

The only argument raised by Corley's response to Matcon's motion was that Article 7.12 would bar an attempt to sue Matcon "as a direct defendant", but would not preclude his action for contribution and indemnity. The Texas Supreme Court rejected precisely that argument in *Hunter*, 620 S.W.2d at 552-53. Corley's third-party claim derives from Exxon's rights against Matcon. Since Exxon could not bring an action against Matcon because the statutory time period had expired, Corley had no right to contribution and indemnity from Matcon and his claim is likewise barred. *Id.*, at 553.

Corley argues on appeal that Article 7.12 merely abates, rather than bars, actions against a dissolved corporation. His contention is based on a section of the current statute that is not applicable to this case, because it did not become effective until at least 3 years after Matcon had dissolved. *See* TEX.BUS.CORP. ACT ANN. art. 7.12 (Vernon Supp.1991). Additionally, this issue was not raised in his response to Matcon's motion for summary judgment. Issues not expressly presented to the trial court by written motion prior to the summary judgment shall not be considered on appeal. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex.1979).

Since there were no genuine issues of material fact and Matcon was entitled to judgment as a matter of law, the trial court properly granted Matcon's motion for summary judgment. The thirteenth point is overruled.

We affirm the judgment of the trial court.